UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

ABIGAIL B.[1]

        Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:23-cv-01027-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Abigail B. seeks judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and § 1383(c)(3). For the reasons set forth below, that decision is AFFIRMED.

**PROCEDURAL HISTORY**

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

Plaintiff protectively filed applications for DIB and SSI benefits on September 16, 2021, alleging a disability onset date of April 4, 2020. Tr. 89, 97. The Commissioner denied plaintiff's claims on December 10, 2021, and again upon reconsideration on April 12, 2022. Tr. 95–96, 103–04, 112, 122. Plaintiff filed a written request for a hearing on April 29, 2022, and a hearing was held before Administrative Law Judge Richard Geib on January 10, 2023. Tr. 46–88, 149–151. At the hearing, plaintiff amended her alleged onset date to January 1, 2020. Tr. 57. The ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act. Tr. 25–38. The Appeals Council denied plaintiff's request for review on May 19, 2023. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity from her amended alleged onset date of January 1, 2020, through her date last insured, September 30, 2020. Tr. 27. At step two, the ALJ determined plaintiff suffered from one severe impairment, a lumbar spine condition. Tr. 28.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 31. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that she can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and can frequently stoop, kneel, crouch, and crawl. *Id.*

The ALJ did not address plaintiff's past relevant work at step four and proceeded to the fifth step. Tr. 35. At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers

in the national economy that plaintiff could perform, including routing clerk, collator-operator, and retail trade marker. Tr. 36–37. Thus, the ALJ concluded plaintiff was not disabled at any time from January 1, 2020, through February 6, 2023, the date of the decision. Tr. 37–38.

## DISCUSSION

Plaintiff argues the ALJ erred in rejecting her subjective symptom testimony. Pl. Br. 5, ECF 10. Plaintiff also argues the ALJ failed to include all of her severe impairments at step two. *Id.* at 5–17.

**I.     Subjective Symptom Testimony**

This court begins by analyzing the ALJ's assessment of plaintiff's subjective symptom testimony, because other findings hinge on that analysis. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 31. However, the ALJ concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ provided two distinct rationales for discounting plaintiff's symptom testimony. First, the ALJ determined that plaintiff's symptom complaints conflicted with her daily activities. Tr. 32–35. Next, the ALJ found that the symptoms were inconsistent with the objective medical evidence. *Id.*

The ALJ acknowledged that plaintiff complained of a wide range of symptoms from her impairments, even those that the ALJ found were not severe. *Id.* However, the ALJ discounted plaintiff's subjective symptom testimony because her allegations of disabling symptoms were not consistent with her daily activities. Tr. 34. The ALJ discussed that in February 2021, plaintiff reported that due to her chronic fatigue, she could only tolerate performing two hours

per day of medical transcription work at home. *Id.* (citing Tr. 1268). The ALJ also noted that in October 2021, plaintiff reported her neck pain was exacerbated by typing and she was able to do her sedentary job involving typing only every other day. *Id.* (citing Tr. 1376). However, the ALJ discredited these allegations regarding plaintiff's chronic fatigue and neck pain by explaining that in February 2022, plaintiff reported she was working on republishing a book for Kindle, and she worked nights writing freelance articles. *Id.* (citing Tr. 1361, 1976). When discussing plaintiff's complaints of debilitating fatigue, the ALJ also noted that plaintiff had completed pharmacy technician schooling in 2019, and then passed her licensing exam in late 2020. Tr. 34 (citing Tr. 1228). The ALJ concluded that "[plaintiff's] ability to attend school and pass her pharmacy technician exam is inconsistent with her complaints of debilitating fatigue." *Id.* The ALJ also noted that "despite her complaints, [plaintiff] plays guitar and piano, cooks, writes, [and] enjoys nature walks[.]" *Id.*

An ALJ may invoke activities of daily living in the context of assessing symptom testimony to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ's observations of plaintiff's activities as documented throughout the medical record contradict plaintiff's testimony regarding her physical limitations. Plaintiff argues that she completed her college classes online and contends that evidence she completed online courses should not detract from her claims that fatigue prevents her from sustaining work activity on a regular and continuing basis. Pl. Br. 17, ECF 10. However, the ALJ's decision in this regard is a reasonable interpretation of the record, and this court may not second-guess it. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[T]he ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is

6 – OPINION AND ORDER

supported by substantial evidence; thus, it is not our role to second-guess it."). In sum, plaintiff's activities of daily living were a clear and convincing reason, supported by substantial evidence in the record, to discredit plaintiff's symptom testimony.

It is not necessary to reach this issue, but the ALJ also rejected plaintiff's subjective complaints based on inconsistencies with the objective medical evidence and plaintiff's lack of compliance with treatment. The ALJ addressed plaintiff's allegations of having migraine headaches almost every day lasting anywhere from four to 48 hours. Tr. 32. Plaintiff testified that during a migraine, she needs to stay in a dark room and take her medication right away. Tr. 60. Plaintiff testified that on days she has migraines she "can't do or accomplish much, even less than normal." *Id.* The ALJ concluded that plaintiff's "allegations concerning her migraines are not consistent with the record." Tr. 32.

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

7 – OPINION AND ORDER

The ALJ explained the inconsistencies in detail. Regarding plaintiff's back pain, the ALJ acknowledged that it is aggravated by physical activity, and that plaintiff testified she can walk a mile on a good day. Tr. 33. The ALJ concluded that the "evidence supports some limitations from back pain but her allegations of inability to remain in any position over 30 minutes and inability to walk more than a mile are not consistent with the record, which reflects minimal findings." *Id.* To support this conclusion, the ALJ cited multiple medical records indicating that, despite her impairments, plaintiff presented well on exam. For example, the ALJ acknowledged an MRI of the lumbar spine from May 2018 that showed small central posterior disc protrusion at L5-S1 with no central or foraminal stenosis. *Id.* (citing Tr. 954). The ALJ discussed how, despite these MRI findings, plaintiff exhibited normal tone and gait, and she was able to heel and toe walk without difficulty at a medical exam in January 2020. *Id.* (citing Tr. 981). The ALJ acknowledged that in September 2020 plaintiff had slight tenderness in the paraspinal muscles and upper trapezius muscles, but her strength and sensation were intact in all extremities. *Id.* (citing Tr. 1187–88). The ALJ noted that in December 2020, plaintiff's musculoskeletal range was normal. *Id.* (citing Tr. 974). Lastly, the ALJ discussed how a treatment note from December 2020 indicates that plaintiff requested accommodations to continue working from home. *Id.* (citing Tr. 1231–32). In this same treatment note, plaintiff reported that her job involves "transfers of heavy people and lifting them," and with exertion like this, she crashes mid-shift and develops severe fatigue, migraines, and pain in her lower back. Tr. 1231. However, plaintiff also indicated that light duty shifts are available that require less bending and lifting, and "she has historically been able to do these." *Id.* Jason Phillips, M.D., noted that if a work-from-home position was not available, then ADA paperwork would be filled out and submitted with an accommodation request of light duty work with no lifting or transfers.

8 – OPINION AND ORDER

Tr. 1232. The ALJ concluded that plaintiff's "interest in work not involving patient transfers supports the residual functional capacity finding for light exertion." Tr. 33 (citing Tr. 1232). Furthermore, when formulating plaintiff's RFC, the ALJ determined that "a light exertion capacity is supported by the MRI finding and exam findings of tenderness but intact motor strength." Tr. 35 (citing Tr. 954, 981, 1187–88, 2653–54).

The ALJ also discussed plaintiff's lack of compliance with her recommended migraine treatment. Tr. 32. Specifically, the ALJ discussed how in January 2020, plaintiff was advised she was having rebound headaches because she was taking Excedrin too often. *Id.* (citing Tr. 981). Daniel Chen, M.D., then prescribed Topamax and instructed plaintiff to follow-up with sleep medicine. *Id.* The ALJ discussed that Dr. Chen noted that Botox injections could be tried if there was no significant improvement with plaintiff's migraines. *Id.* The ALJ explained that despite Dr. Chen's suggestion, there is no evidence that plaintiff pursued Botox injections. *Id.*

Plaintiff argues that she cannot be faulted for failing to pursue Botox treatment when it was only mentioned on one occasion by Dr. Chen and her primary care providers did not discuss it after that. Nevertheless, the ALJ noted that in June 2022, plaintiff was again assessed with rebound headaches due to taking Excedrin too often, despite Dr. Chen's medical advice in January 2020. *Id.* (citing Tr. 2580 (June 2022 chart note discussing Excedrin overuse). The ALJ concluded plaintiff's "lack of interest in pursuing recommended treatment for her migraine/headache complaints is inconsistent with her allegations of disabling symptoms." *Id.* This constitutes a sufficient, clear and convincing reason to discount plaintiff's subjective symptom testimony. "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, and ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638.

9 – OPINION AND ORDER

Again, only one clear and convincing reason is necessary to reject a claimant's subjective symptom testimony; therefore, it is legally sufficient that the ALJ discredited plaintiff's subjective symptom testimony due to inconsistencies with her activities of daily living. The ALJ's decision is supported by substantial evidence, and the court is not permitted to reweigh the evidence. *Garrison*, 759 F.3d at 1010 ("Where the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ.") (internal quotation marks and citation omitted).

## II.    Step Two

Plaintiff alleges the ALJ erred at step two. At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96-4p, *available at* 1996 WL 374187; 20 C.F.R. § 404.1513(a). An impairment is "not severe" if it does not "significantly limit" a claimant's ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). The claimant bears the burden at step two. 20 C.F.R. §§ 404.1512(a), 416.912(a). However, the step two threshold is low; the Ninth Circuit had described it as a "de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *see also Buck v. Berryhill*, 869 F.3d 1040, 1048 ("Step two is merely a threshold determination meant to screen out weak claims.") (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47, 107 S. Ct. 2287, 96 L.Ed.2d 119 (1987)). Whether an impairment is designated as a severe or nonsevere, the ALJ "must consider limitations and restrictions imposed by all of [a claimant's] impairments" when formulating the RFC. SSR 96-8p. Omissions at step two are harmless if the ALJ subsequently considered the

10 – OPINION AND ORDER

effects of the impairments omitted at step two. *See Lewis*, 498 F.3d at 911 (concluding that any failure to list bursitis as severe at step two was harmless error where the ALJ considered functional limitations imposed by bursitis at step four).

Plaintiff contends the ALJ erred in failing to find that her migraine headaches, fibromyalgia, and chronic fatigue syndrome were severe at step two. Pl. Br. 5–17, ECF 10. Specifically, plaintiff argues the ALJ mischaracterized the medical record in making his step two findings and points to diagnoses in the record to argue that these impairments should have been found severe. *Id.* However, "[t]he mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability." *Young v. Sullivan*, 911 F.2d 180, 183-84 (9th Cir. 1990); *Febach v. Colvin*, 580 F. App'x 530, 531 (9th Cir. 2014) (finding diagnosis of depression "alone [was] insufficient for finding a 'severe' impairment" when other evidence in record suggested that the impairment was not severe). Additionally, the ALJ considered plaintiff's severe and nonsevere impairments when formulating the RFC; therefore, any error at step two is harmless. *See Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) ("[E]ven if the [step two] determination was in error, it was harmless because the ALJ considered these conditions among [the] claimed impairments in the overall [RFC] determination.").

Plaintiff is correct that the ALJ did mischaracterize the record at points in his step two analysis. For example, when discussing plaintiff's migraine headaches at step two, the ALJ summarized her migraine treatment in a way that suggested her migraine headaches had improved. Tr. 29, 32 (citing Tr. 2575). Specifically, the ALJ discussed how in July 2022, plaintiff reported that weaning off Excedrin helped resolve some headaches, a beta blocker was also alleviating her migraines, and she had not experienced a severe migraine in the past week. Tr. 28–29 (citing Tr. 2575–76). The ALJ then proceeded to explain that plaintiff denied

11 – OPINION AND ORDER

headaches and photophobia in August 2022, and she has not required neurological care or emergency room treatment for her migraines. Tr. 29 (citing Tr. 2496, 2504). However, these treatment notes from August 2022 were taken out of context. The first treatment note was from an appointment where plaintiff was seen for candida. Tr. 29, 32 (citing Tr. 2495–96). The second treatment note was from an appointment where plaintiff was treated for conjunctivitis of her left eye. *Id.* (citing Tr. 2504). The ALJ's assertion that plaintiff "has not required neurological care" is also arguably inaccurate. Tr. 29. Plaintiff saw Dr. Chen, a neurologist, once in January 2020; in fact, the ALJ addressed Dr. Chen's findings later in his opinion. Tr. 32 (citing Tr. 981).[2]

Even though the ALJ mischaracterized the record in his analysis at step two, this error is harmless because the ALJ found at least one severe impairment at step two and proceeded to consider plaintiff's fibromyalgia, migraine headaches, and chronic fatigue syndrome in determining her RFC. *See Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); *Jesse M. v. Comm'r of Soc. Sec*, No. 2:22-cv-138-rmp, 2023 WL 2656523, at *5 (E.D. Wash. Mar. 27, 2023) (holding that even if the ALJ had erred at step two, the error would be harmless because the ALJ considered plaintiff's hip pain when determining his RFC). The ALJ considered plaintiff's "complaints of pain" and determined they supported a restriction to light work "despite the objective medical evidence not appearing to support less than medium exertion." Tr. 35.

Furthermore, plaintiff has not identified what limitations the ALJ should have included in the RFC determination. *See Youngblood v. Berryhill*, 734 F. App'x 496, 498 (9th Cir.

---

[2] Plaintiff also argues the ALJ's assertion that never had an emergency room visit for migraine treatment is factually incorrect. However, in making this argument, plaintiff cites to emergency room visits outside of relevant period.

12 – OPINION AND ORDER

2018) ("[The claimant] fails to identify . . . limitations that the ALJ should have incorporated into the RFC. As a result, [the claimant] has not argued the issue specifically and distinctly as required to invoke the Court's review.") (simplified). Plaintiff simply argues that "the record before the ALJ demonstrated significant work-related limitations stemming from [p]laintiff's migraines, fibromyalgia, and chronic fatigue syndrome" and "the ALJ erred in not accommodating these limitations, even if the impairments were not severe." Pl. Br. 6, ECF 10.

Additionally, plaintiff largely bases her claim about pain and fatigue-related absences on her symptom testimony. Pl. Br. 17-18, ECF 10. As discussed above, the ALJ properly discounted plaintiff's symptom testimony. Further, plaintiff fails to identify or challenge the ALJ's analysis of any medical opinion stating that, on average, she would miss approximately one day a week or four days a month of work. Finally, the state agency medical consultants, whose opinions the ALJ found partially persuasive and are unchallenged on appeal, reviewed the record and the period at issue and did not find that plaintiff would miss work at a rate that would preclude gainful employment. *See* Tr. 90–96, 98–112, 115–122 (reviewing plaintiff's symptoms including migraine pain, fibromyalgia, and "chronic fatigue" and concluding that plaintiff is able to sustain a full work day/week). Plaintiff fails to demonstrate how listing her impairments as severe at step two would be consequential to the disability determination, especially given that her subjective symptom testimony was properly rejected and she does not challenge any other aspects of the ALJ's decision.

In sum, while the ALJ's step two analysis included mischaracterizations of the medical record, this error is harmless because the ALJ considered plaintiff's nonsevere impairments at the subsequent steps of the sequential analysis. *See* Tr. 31–34; *Lewis*, 498 F.3d at 911.

**ORDER**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

DATED September 26, 2024.

                                                               /s/ Youlee Yim You
                                                        Youlee Yim You
                                                        United States Magistrate Judge